# AFFIDAVIT

I, Audra Bidegain, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I have been employed as a Deputy United States Marshal (DUSM), with the United States Marshals Service (USMS) in Tucson, Arizona since February 2006. I am responsible for conducting investigations involving the location and apprehension of Federal and State Fugitives. In July 2006, I was hired by USMS and was assigned to the District of Arizona, Tucson Division. I attended and completed the Criminal Investigator Training Program and the Deputy U.S. Marshal Basic School at the Federal Law Enforcement Training Center in Glynco, Georgia. Since 2010, I have been assigned to our Fugitive Task Force. My specific job responsibilities include fugitive apprehension for Federal and State Fugitives, and locating and arresting convicted sex offenders who are in violation of Title 18 U.S.C. 2250. The statements contained in this Affidavit are based on my experience and background as a Deputy United States Marshal and on information provided by other law enforcement agents.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

2. The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and the review of documents and reports. I am submitting this Affidavit under Rule 41 of the Federal Rules of Criminal Procedure in support of an Application for a Search Warrant authorizing a search of one Samsung Galaxy A12 cellular telephones and a HP Chromebook laptop. First is a black in color Samsung Galaxy A12 cellular phone, model SM-A125U, bearing IMEI number 354668621058839, hereinafter referred to as "Device 1." Second is a silver in color HP Chromebook laptop Serial# 5CD111LZT5., hereinafter referred to as "Device 2." Device 1 was in the property belonging Ronald Shane STAFFORD at the Sierra Vista Jail following his arrest on June 9, 2021 for a federal supervised release violation. STAFFORD is also in violation of his sex offender registration and is currently facing charges for failure to register as a sex offender in violation of 18 U.S.C. § 2250(a). Device 2 was obtained from Christopher and Clarissa

Beeson on June 11, 2021. The Beeson's are friends of STAFFORD and contacted U.S. Marshals after STAFFORD was arrested to come and take custody STAFFORD's laptop. After STAFFORD's arrest STAFFORD requested his vehicle, a white Ford Escape baring Michigan license plate EJB0838 be turned over to the Beeson's. The Beeson's noticed the laptop under the driver's seat of the vehicle and immediately contacted U.S. Marshals to come and take custody STAFFORD's laptop. During an interview with Deputies from the United States Marshals Service the Beeson's stated they knew STAFFORD as Adam Crawford and that he had tried to convince them he was related to them. Both, Device 1 and 2, are currently secured in the USMS Tucson Office in a locked container that only the affiant has access to. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2250(a), 1001, and 4 are located on SUBJECT DEVICES referred to above.

## TECHNICAL TERMS

3. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. "Computer" as used herein is defined as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly to or operation in conjunction with such device." *See* 18 U.S.C. § 1030(e)(1).

   b. "Cellular telephone": A cellular telephone (or mobile telephone, or wireless telephone) is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic

  "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

c.  Digital device includes any electronic system or device capable of storing and/or processing data in digital form, including: central processing units; laptop or notebook computers; personal digital assistants; wireless communication devices such as telephone paging devices, beepers and mobile telephones; peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors and drives intended for removable media; related communications devices such as modems, cables and connections; storage media such as hard disk drives, floppy disks, compact disks, magnetic tapes and memory chips; and security devices.

d.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

e.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

f.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives.

        This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

g.    GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

h.    PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

i.    Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a

    telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

  j.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

4. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online, I know that Devices 1and 2 have capabilities that allow them to serve as a wireless telephone, receive and send email, instant messaging, a digital camera, and serve as a GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device; evidence of where such persons were when they possessed or used the device; evidence of who such persons were with when they possessed or used the device; evidence of persons with whom they communicated when they possessed or used the device; evidence of text, email, other electronic messaging applications and voice mail communications between the person who possessed or used the device and others; and evidence of pictures and videos taken when they possessed. Navigational coordinates may also be transmitted to and/or from these devices to determine the user's location through a GPS application.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

5. Based on my knowledge, training, and experience, I know that electronic devices such as Devices 1 and 2 can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on electronic devices. Additionally, computer files or remnants of such files can be recovered even if they have been deleted. This is because when a person "deletes" the information on an electronic device, the data

does not actually disappear, rather, the data remains on the storage medium until it is overwritten by new data. Information described in this affidavit can often be recovered by forensic computer experts using forensic tools and software.

      a.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how Devices 1 and 2 were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on Devices 1 and 2:

      b.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      c.     Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

      d.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

      e.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      f.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

6.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of Devices 1 and 2 is consistent with the

warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of Devices 1 and 2 to human inspection in order to determine whether it is evidence described by the warrant. If Devices 1 and 2 are damaged beyond repair, password protected or otherwise inoperable, less invasive data analysis techniques will not accomplish the forensic goals of the examination. If this is true, an analysis technique referred to as "chip off" may be implemented to conduct the data extraction process. Chip-off is an advanced digital data extraction and analysis technique that would involve physically removing flash memory chip(s) from Devices 1 and 2, and then acquiring the raw data using specialized equipment. This process would render Devices 1 and 2 unusable.

In searching for data capable of being read, stored or interpreted by a computer, or cell phone, law enforcement personnel executing this search warrant will employ the following procedure:

> The cell phone and/or media storage devices will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to be seized set forth herein.

> In searching the cell phone and/or media storage devices, the computer personnel may examine all of the data contained in the cell phone devices or data images to view their precise contents and determine whether the data falls within the items to be seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted," "hidden" or encrypted data to determine whether the data falls within the list of items to be seized as set forth herein.

## PROBABLE CAUSE TO SEARCH THE SUBJECT DEVICE

7.     On February 21, 1998 Ronald STAFFORD was convicted in the United States District Court, in the District of Michigan, of Conspiracy to Kidnap, Kidnapping, Transportation with Intent to Engage in Criminal Sexual Activity, and Aggravated Sexual Abuse with Children in case number: 1:97-CR-66-01. Due to this conviction, STAFFORD was sentenced to 300 months in the Federal Bureau of Prisons.

8. On February 9, 2015 STAFFORD completed a State of Wisconsin Department of Corrections sex offender address verification form. STAFFORD completed this form indicating he was currently residing at 302 N Pine Street, Janesville, WI 53548.

9. On December 6, 2018, STAFFORD registered as a sex offender with the State of Michigan listing an address of 537 Chicago Avenue, Kalamazoo, MI 49048.

9. On February 3, 2021 STAFFORD completed the United States Probation System Offender Notice and Acknowledgement of Duty to Register as a Sex Offender. This form outlines STAFFORD's requirements under the Sex Offender Registration and Notification Act (SORNA) and specifically references 18 U.S.C. 2250.

10. On February 10, 2021, an address verification check was completed for STAFFORD. During this check STAFFORD was found to be compliant and residing at his registered address of 537 Chicago Avenue, Kalamazoo, MI 49048. STAFFORD signed this form indicating he understood his requirements and obligations to keep his registration current and up to date.

11. On April 28, 2021, the Kalamazoo Police Department responded to 537 Chicago Avenue, Kalamazoo, MI to speak with STAFFORD about his boyfriend, Matthew Smith who was recently reported missing. Upon arrival, officers were told STAFFORD had left the facility a week prior and had not returned.

12. On April 29, 2021 a warrant was issued by the United States District Court in the District of Western Michigan for the arrest of Ronald STAFFORD for violating the conditions of his supervised release.

13. On May 1, 2021, a white Ford Escape baring Michigan license plate EJB0838 belonging to STAFFORD was captured on a license plate reader near Benson, AZ.

14. On June 5, 2021, information was received that STAFFORD's boyfriend, Matthew Smith was recently transported to Banner University Medical Center in Tucson, AZ. Shortly after being hospitalized Smith contacted Deputy United States Marshal Guzman and confirmed he had been traveling with STAFFORD across the country and the two had been living out of STAFFORD's vehicle in the Walmart parking lot in Sierra Vista, AZ.

15. On June 9, 2021 STAFFORD was arrested by the Sierra Vista Police Department at the Planet Fitness in Sierra Vista, AZ. Device 1 was on STAFFORD's person when he was arrested.

16. On June 10, 2021, during a post Miranda interview STAFFORD admitted to leaving the State of Michigan and traveled to Arizona. STAFFORD admitted he had been in AZ for living in Arizona for approximately two (2) months.

17. STAFFORD admitted he knew he was required to register when he arrived in Arizona. STAFFORD explained he did not register because he feared he would be arrested on the outstanding supervised release warrant.

18. In your affiant's experience, cellular telephone information has yielded information in past investigations that is relevant and material to fugitive investigations. Such information included leads relating to the names of family members, associated friends and other individuals who may assist in the apprehension of the fugitive or may aid in the harboring of the fugitive. I also know, based upon my training and experience, that one way to identify associates is to obtain cellular telephone information for calls made to and from the target phone number, text and email messaging. Therefore, I believe evidence on Devices 1 and 2 may reveal, among other things, the identity and the conversations that occurred in alerting STAFFORD that U.S. Marshals were looking for him and that he was going to be arrested. In addition, location information pertaining to violations of 18 U.S.C. § 2250 (failure to register as a sex offender).

19. Based on the above information, there is probable cause to believe that STAFFORD has information stored on Devices 1 and 2, secured at the USMS evidence vault, that relates to his failure to register as a convicted sex offender. It may also reveal information regarding Devices 1 and 2 have been stored in such a manner that the contents of it are, to the best of my knowledge, in substantially the same state as they were when the target cellular phone and laptop computer first came into possession of the USMS. In my training and experience, I know that Devices 1 and 2 have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices 1 and 2 first came into the possession of the USMS. I therefore request that a warrant be issued, allowing for the search of the target cellular phone and laptop as described above.

19.  *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

20.  Based on the above information I submit that there is probable cause to believe that evidence, fruits, and instrumentalities of a violation of 18 U.S.C. Sections 2250(a) are located on Devices 1 and 2.  I therefore respectfully request that the attached warrant be issued authorizing the search of the items listed in Attachment A for evidence as described in Attachment B.

Respectfully submitted,

_____
Audra Bidegain, Deputy U.S. Marshal
United States Marshals Service

Subscribed and sworn to telephonically this ____6th_____ day of August, 2021.

_____
Honorable Lynnette C. Kimmins
U.S. Magistrate Judge
District of Arizona

## ATTACHMENT A

DEVICE 1:   The property to be searched is a Samsung Galaxy A12 ,SM-A125U, bearing IMEI number 354668621058839, hereinafter referred to as "Device 1". Device 1 is currently secured in a locked container that only the affiant has access to.

DEVICE 2:   The second property to be searched Second is a silver in color HP Chromebook laptop Serial# 5CD111LZT5, hereinafter referred to as "Device 2."  Device 2 is currently secured in a locked container that only the affiant has access to

This warrant authorizes the forensic examination of Devices 1 and 2 for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on Devices 1 & 2 described in Attachment A that relate to violation of Title 18, United States Code Sections 2250(a):

   a. lists of contacts and related identifying information;

   b. any information related to aiding, abetting, harboring (including names, addresses, phone numbers, or any other identifying information) or the destination or individuals to whom assisted (including names, addresses, phone numbers, or any other identifying information);

   c. any information recording STAFFORD's or travel from April 2021 to the present;

   d. any information recording contact between STAFFORD and any other co-conspirators whom have not yet been identified;

   e. all bank records, checks, credit card bills, account information, and other financial records related to the funding of STAFFORD's attempts to evade law enforcement and or avoid registration.

   f. Any Short Message Service messages (SMS), Instant Messages (IM) or similar text messages, depicting the communication between STAFFORD and the persons that planned, carried or otherwise took part in/knew about the listed violations.

   g. Any Multimedia Message Service messages (MMS), IM or similar multimedia messages, depicting the communication between STAFFORD and the persons that planned, carried or otherwise took part in the listed violations.

   h. Any captured telephone numbers that may be stored in the listed telephones that are associated with planning or in furtherance of the listed violations.

   i. Any captured digital photograph evidence that may be stored in the listed telephones or on the media storage devices (memory cards) that may be associated with the planning or in furtherance of the listed violations.

    j. Any geolocation data, coordinates, global position system data, or other electronic information detailing locations involved with the listed parties and violations

2. Evidence of user attribution showing who used or owned Devices 1 & 2 at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of Device 1 & 2 to access the Internet, including:

    a. records of internet protocol addresses used;

    b. records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.